# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELI LILLY AND COMPANY, by NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, as subrogee,<br><br>        Plaintiffs,<br><br>v.<br><br>TYCO INTEGRATED SECURITY, LLC, F/K/A ADT SECURITY SERVICES, INC., A SUBSIDIARY OF TYCO INTERNATIONAL LTD., CO.,<br><br>        Defendants. | CASE NO. 3-13-cv-00329 (MPS)<br><br><br><br><br><br><br><br><br><br><br><br>April 4, 2013 |

## MEMORANDUM OF LAW IN SUPPORT OF TYCO INTEGRATED SECURITY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

5594352 v1

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ 1

TABLE OF AUTHORITIES ......................................................................................................... 3

INTRODUCTION .......................................................................................................................... 5

    I.    FACTUAL BACKGROUND ........................................................................................... 5

        A.    National Union's Allegations ...................................................................... 6

            1.    Eli Lilly and TycoIS's Relationship ................................................ 6

            2.    The March 13-14, 2010 Burglary ..................................................... 7

            3.    The FBI Apprehends and Indicts the Suspected Burglars .............. 7

            4.    National Union's Claims .................................................................. 8

        B.    TycoIS's and Eli Lilly's Contract for Security Services ............................ 8

    II.    LEGAL STANDARD ...................................................................................... 9

    III.    ARGUMENT ................................................................................................. 10

        A.    National Union has no right to bring this lawsuit because Eli Lilly waived National Union's subrogation rights against TycoIS. .................. 10

        B.    The Contract and Connecticut's statutes of limitation bar this lawsuit. ...................................................................................................... 12

            1.    National Union did not commence any of its claims against TycoIS until March 14, 2013. ........................................................ 12

            2.    The one-year limitation of action provision in the Contract bars National Union's claims. ......................................................... 13

            3.    National Union failed to file this lawsuit within the time required by Connecticut's statutes of limitation. ........................... 13

        C.    National Union's claims fail federal pleading standards. ......................... 15

            1.    National Union's speculative and conclusory allegations do not satisfy Iqbal and Twombly. ....................................................... 15

            2.    National Union's fraud-based claims fail Rule 9(b)'s particularity requirement ................................................................. 17

    IV.    CONCLUSION ................................................................................................... 18

CERTIFICATE OF SERVICE ............................................................................................... 19

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Air Brake Sys., Inc. v. TUV Rheinland of N.A., Inc.*,
    699 F. Supp. 2d 462 (D. Conn. 2010) .................................................................................. 13

*Albany Ins., Co. v. United Alarm Servs., Inc.*,
    194 F. Supp. 2d 87 (D. Conn. 2002) ........................................................................ 10, 11, 13

*Amer. Home Ins. Co. v. Monsanto Enviro-Chem Sys., Inc.*,
    16 F. App'x 172 (4th Cir. 2001) .......................................................................................... 11

*Arton v. Liberty Mut. Ins. Co.*,
    302 A.2d 284 (Conn. 1972) ................................................................................................. 13

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) ...................................................................................... 5, 9, 16, 19

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) .................................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 5, 9, 16, 19

*Best Friends Pet Care, Inc. v. Design Learned, Inc.*,
    823 A.2d 329 (Conn. App. 2003) ............................................................................... 10-11, 12

*City of W. Haven v. Commercial Union Ins., Co.*,
    894 F.2d 540 (2d Cir. 1990) ................................................................................................ 14

*Consol. Motor Lines, Inc. v. M&M Transp. Co.*,
    20 A.2d 621 (Conn. 1941) ................................................................................................... 12

*Converse v. Gen. Motors Corp.*,
    893 F.2d 513 (2d. Cir. 1990) ............................................................................................... 12

*Denton v. Hernandez,*
    504 U.S. 25 (1992) ........................................................................................................... 9-10

*Fichera v. Mine Hill Corp.*,
    541 A.2d 472 (Conn. 1988) ................................................................................................. 14

*In re Hunter Envtl. Servs., Inc. Securities Litigation*,
    921 F.Supp. 914 (2d. Cir. 1996) .......................................................................................... 10

*Int'l Audiotext Network, Inc. v. AT&T Co.*,
  62 F.3d 69 (2d Cir. 1995) ...................................................................................................10

*Lentini v. Fid. Nat'l Title Ins. Co. of New York*,
  479 F. Supp. 2d 292 (D. Conn. 2007) ...............................................................................18

*Neitzke v. Williams,*
  490 U.S. 319 (1989)............................................................................................................10

*O'Brien v. Nat'l Prop. Analysts Partners,*
  936 F.2d 674 (2d Cir. 1991).............................................................................................18

*Parrella v. Lawrence & Mem'l Hosp.*,
  3:08-CV-1445PCD, 2009 WL 1279290 (D. Conn. May 5, 2009)............................................16

*Prokolkin v. Gen. Motors Corp.*,
  365 A.2d 1180 (Conn. 1976) ............................................................................................14

*Rolon v. Henneman,*
  517 F.3d 140 (2d Cir. 2008)..............................................................................................16

*Shields v. Citytrust Bancorp, Inc.,*
  25 F.3d 1124 (2d Cir. 1994)..............................................................................................17

*Starr v. Sony BMG Music Entm't,*
  592 F.3d 314 (2d Cir. 2010).............................................................................................16

*T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*,
  33 F. Supp. 2d 122 (D. Conn. 1998), *aff'd*, 312 F.3d 90 (2d Cir. 2002) .................................14

*Walker v. Armco Steel Corp.*,
  446 U.S. 740 (1980)............................................................................................................12

**STATUTES**

Conn. Gen. Stat. Ann. § 42-110g(f)................................................................................14, 15

Conn. Gen. Stat. Ann. § 52-584.................................................................................13, 14, 15

Conn. Gen. Stat. Ann. § 52-577........................................................................................14, 15

**RULES**

Fed. R. Civ. P. 12(b)(6)..................................................................................................6, 9, 10

Fed. R. Civ. P. 9(b) ........................................................................................................5, 17, 18

## **INTRODUCTION**

In this case, National Union makes serious allegations about the ability of Tyco Integrated Security ("TycoIS") to safeguard its customers' confidential information, yet fails to plead facts to support these grave accusations.  But National Union has no right to bring this subrogation lawsuit because Eli Lilly, National Union's insured, waived any right of subrogation National Union may have had against TycoIS.  And even if National Union had the right to bring this subrogation action, National Union filed the lawsuit out of time.  The Court should therefore dismiss National Union's Complaint in its entirety, with prejudice.

Not only are the claims legally barred, but the substance of the allegations is deficient.  Notably, instead of backing its grave allegations with factual support, National Union merely assumes that, because burglars circumvented and disabled a TycoIS alarm system at an Eli Lilly distribution facility in Enfield, Connecticut, they necessarily must have had confidential information about the facility's security system and that TycoIS must have failed to safeguard this information.  But National Union has not pled that the burglars actually had confidential information about the alarm system; how they got this information; and more specifically, how they got a 2010 Confidential System Proposal from TycoIS, when and where they got it, and who from TycoIS gave it to them.  Federal courts reject lawsuits founded solely on speculative assumptions such as these.  National Union's Complaint fails to satisfy the federal pleading standards articulated in *Iqbal*, *Twombly*, and Rule 9(b).  The Court should therefore grant ADT's Motion and dismiss National Union's Complaint with prejudice.

## I.     FACTUAL BACKGROUND

### A.     National Union's Allegations

#### 1.     *Eli Lilly and TycoIS's Relationship*[1]

As stated in the Complaint, Eli Lilly and TycoIS first entered into a contract for security equipment and monitoring services at Eli Lilly's Enfield, Connecticut distribution warehouse in 1974. Compl. ¶ 12 (Doc. 1). Although the contractual services that TycoIS provides to Eli Lilly for the Enfield warehouse evolved over time, they never ended. *Id.*

In July 2009, TycoIS representatives reviewed the Enfield warehouse's security system. *Id.* at ¶ 21. TycoIS then submitted a confidential system proposal for enhancements and upgrades to the existing security system. *Id.* According to National Union, the "2010 Confidential [TycoIS] System Proposal . . . identifies the location of each of thirteen enumerated and labeled cameras and highlights specific faults and blind spots in the video images captured by each camera . . . ." *Id.* at ¶ 25. It also alleges that the 2010 Proposal "identifies the actual coordinates of every motion detector, beam, roof hatch, intercom, overhead door contact, fixed camera, panic button, card recorder, glass break sensor, contact, control panel and keypad." *Id.* at ¶ 27. And finally, National Union alleges that the Proposal "highlights the absence of sufficient monitoring of the master control equipment and recommends the addition of a motion detector at the back of the MCC [Master Control Center] facing the entrance door to the 'MCC' room." *Id.* at ¶ 31.[2]

---

[1]     National Union sued Tyco Integrated Security, formerly known as ADT Security Services, Inc. ADT Security Services, Inc. ("ADT") changed its name to Tyco Integrated Security ("TycoIS") in October of 2012. Although the Complaint refers to ADT only, all references in the Motion to Dismiss and Memorandum of Law in Support will be to TycoIS as the proper party to this lawsuit.

[2]     Although TycoIS disputes the veracity of the allegations in the Complaint, for purposes of this Motion it accepts all well-pleaded facts as true as required by Fed. R. Civ. P. 12(b)(6).

### 2.     *The March 13-14, 2010 Burglary*

On the night of March 13-14, 2010, burglars stole more than $60 million in pharmaceuticals from the Enfield warehouse. *Id.* at ¶ 33. According to the Complaint, the burglars parked a tractor-trailer truck "in the only loading bay out of seven that was outside the view of the existing surveillance cameras," gained access to and cut a hole in the roof, rappelled into the Enfield warehouse, and disabled the security system. *Id.* at ¶¶ 33-35, 37-38. Because the burglars disconnected the security system from its communication device and destroyed the cell phone backup lines, the security system did not send alarm signals to the TycoIS monitoring station during the burglary. *Id.* at 38.

### 3.     *The FBI Apprehends and Indicts the Suspected Burglars*

On May 3, 2012, the FBI indicted Amaury and Amed Villa for the burglary of the Enfield warehouse; the Villas are pending trial and/or sentencing in Connecticut federal court. *Id.* at ¶¶ 41-42. National Union alleges that the burglars used the 2010 Confidential System Proposal "to evade the equipment and monitoring services contracted for by and between [TycoIS] and Eli Lilly." *Id.* at ¶ 45. The Complaint does not allege how the burglars purportedly obtained the 2010 Confidential System Proposal, when and where they got it, or who gave it to them. Specifically, it does not allege anywhere that the burglars obtained the Proposal from anyone at TycoIS or accessed the Proposal at TycoIS. Instead, National Union merely alleges – without support or any specific factual details – that "[TycoIS] permitted confidential, sensitive information regarding the essential details of the components of the existing security system and equipment of its clients' and prospective clients' facilities to become available to third persons." *Id.* at ¶ 76.

### 4. *National Union's Claims*

National Union asserts claims against TycoIS for (1) Failure to Safeguard Confidential Information; (2) Failure to Warn; (3) Fraudulent Inducement; (4) Breach of the Covenant of Good Faith and Fair Dealing; (5) Injuring the Right of the Party to Receive the Benefit of the Contract; (6) Violation of the Unfair Trade Practices Act; and (7) Punitive Damages. *See generally* Compl. National Union filed its lawsuit against TycoIS on March 11, 2013, but did not serve TycoIS until March 14, 2013. *See* Proof of Service (Doc. 10).

### B. TycoIS's and Eli Lilly's Contract for Security Services

On or about November 18, 2004, Eli Lilly entered into a Commercial Sales Proposal/Agreement ("Contract") with TycoIS for the installation, monitoring and inspection of a burglar alarm system at its Enfield, Connecticut warehouse. *See* Contract (Ex. A); *see also* Compl. at ¶¶ 19-20 (Doc. 1). Eli Lilly also contracted with TycoIS for the installation of CCTV and card access systems. *See* Card Access & CCTV Contracts (Ex. B); Compl. at ¶¶ 19-20. Between 2004 and 2008, TycoIS modified the alarm systems by adding and removing certain components. *See* Riders and Proposals for additional equipment (Ex. C).[3]

The very front of the Contract it provides:

In accepting this Proposal, Customer agrees to the terms and conditions contained herein including those on the reverse side.

…

**ATTENTION IS DIRECTED TO THE WARRANTY, LIMIT OF LIABILITY AND OTHER CONDITIONS ON REVERSE SIDE**.

Contract, p. 1 (emphasis in original) (Ex. A). Specifically, Eli Lilly acknowledged that TycoIS's installation and monitoring of Eli Lilly's alarm system did not make TycoIS the insurer of Eli

---

[3] Because the relevant terms and conditions of all of these contracts are identical, and because all of the riders for additional equipment specifically incorporate the terms and conditions of these contracts, all references to the relevant terms and conditions will be to the 2004 Contract. *See* Exs. A-C.

Lilly's property, that Eli Lilly would look exclusively to its insurer in the event of any loss, and that Eli Lilly would release and waive all right of recovery against TycoIS arising by way of subrogation:

> **IT IS UNDERSTOOD THAT [TycoIS] IS NOT AN INSURER, THAT INSURANCE, IF ANY, SHALL BE OBTAINED BY THE CUSTOMER AND THAT THE AMOUNTS PAYABLE TO [TycoIS] HEREUNDER ARE BASED UPON THE VALUE OF THE SERVICES AND THE SCOPE OF LIABILITY AS HEREIN SET FORTH AND ARE UNRELATED TO THE VALUE OF CUSTOMER'S PROPERTY OR PROPERTY OF OTHERS LOCATED IN THE CUSTOMER'S PREMISES. CUSTOMER AGREES TO LOOK EXCLUSIVELY TO CUSTOMER'S INSURER TO RECOVER FOR INJURIES OR DAMAGE IN THE EVENT OF ANY LOSS OR INJURY AND RELEASES AND WAIVES ALL RIGHT OF RECOVERY AGAINST [TycoIS] ARISING BY WAY OF SUBROGATION.**

*Id*., p. 2, ¶ F (emphasis in original). Eli Lilly also agreed that "**NO SUIT OR ACTION SHALL BE BROUGHT AGAINST [TycoIS] MORE THAN ONE (1) YEAR AFTER THE ACCRUAL OF THE CAUSE OF ACTION THEREFOR**." *Id*. (emphasis in original).

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, National Union "must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). A complaint that merely "tenders naked assertions devoid of further factual enhancement" fails to meet this standard. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quotation marks and alterations omitted). Moreover, even if the complaint contains sufficiently well-pleaded allegations, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. A court may dismiss a claim as "factually frivolous" if the sufficiently well-pleaded facts are "clearly baseless"—that is, if they are "fanciful," "fantastic," or "delusional." *Denton v. Hernandez,* 504

U.S. 25, 32–33 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 325, 327-28 (1989)) (quotation marks omitted).

Although a court is primarily focused on the allegations within the complaint when deciding a Rule 12 motion, the court may also consider documents incorporated into the complaint by reference and documents upon which plaintiff relied in bringing suit. *In re Hunter Envtl. Servs., Inc. Securities Litigation*, 921 F.Supp. 914, 917-18 (2d. Cir. 1996); *see also Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 71-72 (2d Cir. 1995) (upholding district court's consideration of agreement referenced by plaintiff in complaint, but not attached to complaint when deciding a Rule 12 motion).

Despite National Union's failure to attach Eli Lilly and TycoIS's Contract to its Complaint, National Union's claims are premised on TycoIS's performance of its obligations under this Contract, which National Union alleges Eli Lilly executed with TycoIS in 2004. Compl. at ¶ 19. Thus, the Contract is both directly referenced in the Complaint and integral to National Union's claims. The Court may therefore consider the Contract when deciding TycoIS's Rule 12(b)(6) motion. *See Int'l Audiotext Network, Inc.*, 62 F.3d at 71-72.

### III.  ARGUMENT

#### A.  National Union has no right to bring this lawsuit because Eli Lilly waived National Union's subrogation rights against TycoIS.

Eli Lilly waived National Union's right to pursue this subrogation action against TycoIS. *See* Contract, p. 2, ¶ F (Ex. A). "A contractual waiver of subrogation rights is enforceable if . . . the waiver is clear and unambiguous." *Albany Ins., Co. v. United Alarm Servs., Inc.*, 194 F. Supp. 2d 87, 92-97 (D. Conn. 2002) (enforcing waiver of subrogation provision in alarm services contract and dismissing property insurer's subrogation claim); *see also Best Friends Pet Care, Inc. v. Design Learned, Inc.*, 823 A.2d 329, 334 (Conn. App. 2003) (upholding waiver of

subrogation provision finding that such provisions work to ensure injuries or damage are covered by the appropriate types of insurance and that the costs of that insurance are allocated as agreed to by the parties).

Eli Lilly acknowledged that TycoIS's installation and monitoring of Eli Lilly's alarm system did not make TycoIS the insurer of Eli Lilly's property, that Eli Lilly would look exclusively to its insurer in the event of any loss, and that Eli Lilly "releases and waives all right of recovery against [TycoIS] arising by way of subrogation." Contract, at 2 ¶ F (Ex. A). Despite its attempts to sidestep the Contract in its Complaint, National Union cannot escape the fact that the relationship between TycoIS and Eli Lilly, and all that flowed from that relationship, had its genesis in express contractual agreements. Thus, it does not matter how National Union pleads its claims, because Eli Lilly waived National Union's right to pursue them against TycoIS. *See Albany Ins. Co.*, 194 F. Supp. 2d at 95 (holding that the language "no insurance company . . . shall have . . . any right of subrogation" was broad enough to cover all of the subrogating insurer's claims, and not just those based on breach of contract); *see also Amer. Home Ins. Co. v. Monsanto Enviro-Chem Sys., Inc.*, 16 F. App'x 172, 175-78 (4th Cir. 2001) (holding that subrogating insurer's common-law failure to warn claim, although independent from any contractual obligation, was nevertheless barred by the waiver of subrogation in the contract because it was not so remote as to fall outside the context of the waiver).

Here, the damages National Union seeks to recover – property damages resulting a burglary at the Enfield warehouse where TycoIS installed and monitored a security alarm system – are precisely those damages TycoIS and Eli Lilly agreed to allocate to Eli Lilly's insurer. Contract at p. 2, ¶ F ("**IT IS UNDERSTOOD THAT [TycoIS] IS NOT AN INSURER, THAT INSURANCE, IF ANY, SHALL BE OBTAINED BY THE CUSTOMER . . . CUSTOMER**

**AGREES TO LOOK EXCLUSIVELY TO CUSTOMER'S INSURER TO RECOVER FOR INJURIES OR DAMAGE IN THE EVENT OF ANY LOSS OR INJURY**") (Ex. A.) (emphasis in original); *see also Best Friends*, 823 A.2d at 334 (upholding waiver of subrogation because such provisions work to ensure injuries or damage are covered by the appropriate types of insurance and that the costs of that insurance are allocated as agreed to by the parties). Thus, Eli Lilly's waiver of National Union's subrogation rights forecloses National Union's ability to bring this lawsuit, and the Court should dismiss National Union's Complaint with prejudice.

      **B.**      **The Contract and Connecticut's statutes of limitation bar this lawsuit.**

The relevant burglary occurred on March 13-14, 2010. National Union did not commence the lawsuit by serving TycoIS until March 14, 2013. Based on both the express language in the Contract and Connecticut's statutes of limitation, National Union's claims are untimely and must be dismissed with prejudice.

      *1.*      *National Union did not commence any of its claims against TycoIS until March 14, 2013.*

Although National Union filed this lawsuit on March 11, 2013, it did not serve TycoIS until March 14, 2013. *See* (Doc. 10). In Connecticut a lawsuit is considered commenced for purposes of statutes of limitations on the date plaintiff serves defendant with the complaint. *Converse v. Gen. Motors Corp.*, 893 F.2d 513, 515 (2d. Cir. 1990) (applying Conn. law) ("the Connecticut Supreme Court has long adhered to the rule that only actual service upon the defendant will satisfy the statutes of limitations") (*citing Consol. Motor Lines, Inc. v. M&M Transp. Co.*, 20 A.2d 621, 622 (Conn. 1941)).[4] Thus, for limitation purposes, National Union did not commence this lawsuit until it served TycoIS on March 14, 2013. (Doc. 10).

---

[4]   *See also Converse*, 893 F.2d at 515 ("in the absence of a federal rule directly on point, state service requirements which are an integral part of the state statute of limitations should control in an action based

> **2.     The one-year limitation of action provision in the Contract bars National Union's claims.**

Eli Lilly agreed that "no suit or cause of action against [TycoIS] shall be brought more than one year after the accrual of the cause of action therefor." Contract, at 2, ¶ F (Ex. A). As this Court recently noted, "the state courts of Connecticut have held such provisions valid and enforceable for more than a century, holding that a contractual provision that limits the time within which a party can bring suit is valid, does not operate as a statute of limitations, and is not susceptible to exceptions that excuse suits which are untimely under the statute of limitations." *Air Brake Sys., Inc. v. TUV Rheinland of N.A., Inc.*, 699 F. Supp. 2d 462, 471 (D. Conn. 2010) (collecting cases).

The burglary occurred on March 13-14, 2010. Compl. at ¶ 33. National Union commenced this lawsuit on March 14, 2013. (Doc. 10). Thus, pursuant to the clear terms of the Contract, National Union's right to bring this suit expired *more than two years ago*.[5] As a result, its claims are untimely and the Court should dismiss the Complaint with prejudice.

> **3.     National Union failed to file this lawsuit within the time required by Connecticut's statutes of limitation.**

National Union's suit is also untimely under Connecticut's statutes of limitation. Specifically, Conn. Gen. Stat. Ann. § 52-584 required National Union to commence its claims for property damage premised on negligence and reckless or wanton misconduct within three years from the date of any act or omission:

---

on state law which is filed in federal court under diversity jurisdiction") (*quoting Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-53 (1980).

[5]   National Union, as subrogee of Eli Lilly has no greater rights than its insured and is subject to the same defenses as its insured. *Albany Ins. Co.*, 194 F. Supp. at 93 ("When an insurer brings a subrogation claim, the insurer's rights 'are no different or more advantageous' than the rights of the insured, and the insurer 'stands in [the insured's] shoes as to any waiver or estoppel' which could affect the rights of the parties.") (*quoting Arton v. Liberty Mut. Ins. Co.*, 302 A.2d 284, 291 (Conn. 1972)).

> No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, … shall be brought but within two years from the date when the injury is first sustained or discovered…, and except no such action may be brought more than three years from the date of the act or omission complained of…[6]

Conn. Gen. Stat. Ann. § 52-584.  Conn. Gen. Stat. Ann. § 52-577 governs all other tort-based claims, including fraud, and requires parties to commence suit within three years of the alleged tortious act.  Conn. Gen. Stat. Ann. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."); *see also T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 33 F. Supp. 2d 122 (D. Conn. 1998), *aff'd*, 312 F.3d 90 (2d Cir. 2002) (applying § 52-577 to fraud claims); *City of W. Haven v. Commercial Union Ins., Co.*, 894 F.2d 540, 546 (2d Cir. 1990) (applying § 52-577 to claims alleging breach of the duty of good faith and fair dealing).  Finally, Connecticut's Unfair Trade Practices Act ("CUTPA") has a three-year limitation period running from the date of the violation, not the date of discovery.  CGSA § 42-110g(f).  The Connecticut Supreme Court has made clear that it is the act that starts the clock on all three statutes, not the accrual of the cause of action. *Fichera v. Mine Hill Corp.*, 541 A.2d 472, 476 (Conn. 1988) ("[the] legislative choice of language [– from the date of the act or omission complained of –] precludes any construction therof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred.") (*citing Prokolkin v. Gen. Motors Corp.*, 365 A.2d 1180 (Conn. 1976)).

National Union's claims relate to TycoIS's alleged failure to safeguard confidential information regarding the Enfield warehouse's security system, which National Union contends allowed the March 13-14, 2010 burglary to succeed.  *See generally*, Compl.  Thus, any alleged act leading to the disclosure of this confidential information necessarily occurred *before* the

---

[6] Additionally, under Section 52-584, National Union had to commence its negligence-based claims within two-years from the date of the burglary, or March 13-14, 2012.  Its failure to do so dooms its negligence-based claims.

burglary began on March 13, 2010. Indeed, even if the alleged disclosure occurred on the day of the burglary, National Union should have brought its claims against TycoIS no later than March 13, 2013. But it did not commence this lawsuit until March 14, 2013, when it served TycoIS. *See* (Doc. 10). Conn. Gen. Stat. Ann. §§ 52-577, 52-584 and 42-110g(f) therefore time-bar National Union's claims, and the Court should dismiss National Union's Complaint with prejudice.

    **C.**    **National Union's claims fail federal pleading standards.**

          *1.*    *National Union's speculative and conclusory allegations do not satisfy Iqbal and Twombly.*

National Union's claims are all based on the assumption that the burglars obtained the 2010 Confidential System Proposal ("Proposal") from TycoIS. But National Union fails to actually allege that the criminals got the Proposal from TycoIS or even accessed it on TycoIS's systems, let alone *how* the burglars did obtain or would have obtained the Proposal. Indeed, every allegation suggesting some connection between TycoIS and the burglary contains nothing but speculative and vague assertions:

- "The confidential information regarding the inadequacies of the existing [TycoIS] system that were identified by [TycoIS] in the 2010 Confidential System Proposal were utilized to evade the equipment and monitoring services contracted for by and between [TycoIS] and Eli Lilly." Compl. at ¶ 45 (Doc. 1).

- "Upon information and belief, this burglary was orchestrated by individuals originating from the Florida area who utilized information of a nature that [TycoIS] in Florida would have compiled in the ordinary course of its business evaluating its clients' and prospective clients' security systems." *Id.* at ¶ 65.

- "[TycoIS] failed to safeguard the information it possessed and created regarding the details of [Eli Lilly's] security system." *Id.* at ¶ 68.

- "[TycoIS] permitted confidential, sensitive information regarding the essential details of the components of the existing security system and equipment of its

clients' and prospective clients' facilities to become available to third persons." *Id.* at ¶ 76.

Federal courts do not permit speculative and conclusory allegations to survive motions to dismiss. *See Twombly,* 550 U.S. at 555 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Nor is the Court "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman,* 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted). As a result, National Union's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly,* 550 U.S. at 545; *see also Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir. 2010) (applying *Iqbal* standard of review).

The Complaint is utterly devoid of any specific facts which plead how the burglars obtained the 2010 Confidential System Proposal, when and where they got it, and who gave it to them. *See Parrella v. Lawrence & Mem'l Hosp.*, 3:08-CV-1445PCD, 2009 WL 1279290, at *5 (D. Conn. May 5, 2009) (finding that plaintiff's allegations failed federal pleading standards because they amounted "to no more than a conclusory assertion that Defendant violated the ADA, and begs the questions: What actions? When? By whom?") (Ex. D). National Union's "factual grounds" must consist of more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," and must tender more than "naked assertion[s] devoid of further factual enhancement." *Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555, 557, 127 S. Ct. 1955) (internal quotation marks omitted). Here, even the "naked assertion" is missing – that the burglars ever obtained the Proposal from TycoIS – creating a clear gap between National Union's theory and the facts actually alleged. The Court should dismiss National Union's claims with prejudice for failure to satisfy federal pleading standards.

### *2.   National Union's fraud-based claims fail Rule 9(b)'s particularity requirement.*

National Union failed to plead its claims for fraudulent inducement and violations of CUTPA with particularity as mandated by Rule 9(b).  Without identifying any specific person or statement, National Union alleges that TycoIS "fraudulently induced [Eli Lilly] to permit [TycoIS] to conduct a review of the existing security infrastructure and propose potential improvements to that security system by explicitly or otherwise representing that . . . such conduct would not increase [Eli Lilly's] risk of exposure to property theft."  Compl. at ¶ 95 (Doc. 1).  It further alleges that Eli Lilly "relied on the representation, implicit or explicit, that in permitting [TycoIS] to document the existing security system for the purpose of creating a Confidential proposal to market potential improvements . . . ."  *Id.* at ¶ 96.  National Union's CUTPA claim is similarly devoid of any particularity.  In support, it alleges that TycoIS "holds itself out to the general public and to [Eli Lilly] in particular as safe, responsible, state-of-the-art, and capable of safeguarding [Eli Lilly's] security system;" and "[TycoIS's] claims of fidelity and care with regard to safeguarding [Eli Lilly's] security services were untrue and known to be untrue by [TycoIS] at the time Plaintiff was caused to rely on them."  *Id.* at ¶¶ 110-11.

Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To do so, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994).  Rule 9(b) applies to CUTPA claims if the claim relies on affirmative statements or omissions involving fraud or mistake.  *Lentini v. Fid. Nat'l Title Ins. Co. of New York*, 479 F. Supp. 2d 292, 298, n.2 (D. Conn. 2007).  Rule 9(b) applies to National Union's CUTPA claim because it is premised on

TycoIS's alleged misrepresentations. *See* Compl. ¶ 111 (alleging that TycoIS's "claims of fidelity and care . . . were untrue and known to be untrue" by TycoIS at the time it made them) (Doc. 1).

National Union's fraudulent-inducement and CUTPA claims do not satisfy Rule 9(b). National Union failed to allege what specific representations Eli Lilly allegedly relied on, who made those statements, and when and where they were made. In addition to failing to identify a specific allegedly fraudulent statement by TycoIS, National Union's allegations even waffle as to whether whether TycoIS's alleged misrepresentation was express or implied. Compl. at ¶ 96 (alleging that Eli Lilly "relied on the representation, implicit or explicit, that in permitting [TycoIS] to document the existing security system . . . .") (Doc. 1). Because National Union's fraud-based claims fail Rule 9(b), the Court should dismiss them with prejudice.[7]

## IV.   CONCLUSION

National Union has no right to assert any subrogation suit against TycoIS because Eli Lilly waived its ability to do so. Even if it had the right to bring suit, National Union failed to do it in the time required by the Contract and by the Connecticut statutes of limitations. As a result, the Court should dismiss this case with prejudice.

Moreover, National Union has made serious allegations about TycoIS's ability to safeguard customers' confidential information without identifying any specific, factual conduct to support those accusations. Federal law under *Twombly* and *Iqbal* does not permit National Union to file a lawsuit based on a speculative assumptions devoid of factual support. Because

---

[7] Because, as noted in section C.1., National Union premised its claims on nothing more than speculative and conclusory allegations, its fraud-based claims fail Rule 9(b)'s heightened pleading standards for this additional reason. *See O'Brien v. Nat'l Prop. Analysts Partners,* 936 F.2d 674, 676 (2d Cir. 1991) ("while Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges.") (internal citations omitted).

National Union has done just that, the Court should dismiss National Union's claims with prejudice.

                 Tyco Integrated Security LLC

By: /s/ Amy E. Markim
    William H. Champlin III (ct04202)
    Michael T. McCormack (ct13799)
    Amy Markim (ct27974)
    Hinckley, Allen & Snyder LLP
    20 Church Street
    Hartford, CT 06103-1221
    Telephone:  860-331-2670
    Facsimile:   860-331-2671
    wchamplin@haslaw.com
    mtmccormack@haslaw.com
    amarkim@haslaw.com

    Charles C. Eblen (*pro hac vice* pending)
    Shook, Hardy & Bacon LLP
    2555 Grand Blvd.
    Kansas City, MO 64108
    Telephone: 816-474-6550
    Facsimile: 816-421-5547

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2013, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

                 /s/ Amy E. Markim