## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-----------------------------------------------------------------------X

ELI LILLY AND COMPANY, by NATIONAL UNION
FIRE INSURANCE COMPANY OF PITTSBURGH,
PENNSYLVANIA, as subrogee,

                    Plaintiff,

                                                    CIVIL NO. 13-CV-00329

          -against-

TYCO INTEGRATED SECURITY, LLC., F/K/A
ADT SECURITY SERVICES, INC., A SUBSIDIARY
OF TYCO INTERNATIONAL LTD, CO.

                    Defendant.

-----------------------------------------------------------------------X

## AMENDED COMPLAINT

Plaintiff NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, (hereinafter "National Union")  as subrogee of ELI LILLY AND COMPANY, (hereinafter referred to as "Eli Lilly") by and through its attorneys Tisdale Law Offices, LLC and The Gilbert Firm, P. C. as and for its Amended Complaint against Defendants TYCO INTEGRATED SECURITY, LLC., F/K/A ADT SECURITY SERVICES, INC., A SUBSIDIARY OF TYCO INTERNATIONAL LTD, CO., (hereinafter "ADT/TYCO"), , alleges upon information and belief as follows:

## NATURE OF THE ACTION

1.     This is an action for damages resulting from the negligent and intentional actions or inactions of the Defendant that facilitated the theft of Eli Lilly pharmaceuticals by third parties.

## PARTIES

2.      Eli Lilly is an Indiana Corporation, with its principal place of business in Indianapolis, Indiana.

3.      Plaintiff, National Union is a Pennsylvania Insurance Corporation, with its principal place of business in New York.  National Union provided an insurance policy to Eli Lilly that provided certain coverage for the incident and resulting damages that are the subject of this action.  By virtue of the payments, National Union has a right, title or claim in law and equity to an award of damages for those sums paid.

4.      Defendant, TYCO INTEGRATED SECURITY, LLC, is a Florida Corporation with its principal place of business in Boca Raton, Florida.

5.      Defendant ADT at all relevant times was a Delaware corporation with its principal place of business in Boca Raton, Florida.

6.      Defendant, TYCO INTERNATIONAL SERVICES, LLC, was a Massachusetts Corporation with its principal place of business in Wilmington, Delaware.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to Title 28 U.S.C. § 1332 over actions between corporations and individuals of diverse citizenship with damages exceeding $75,000 exclusive of interest and costs.

8.      ADT/TYCO are subject to the jurisdiction of the courts located in the state of Connecticut because they operated, conducted, engaged in or carried on a business venture in the state of Connecticut and/or have an office or agency in this state; and/or were engaged in substantial business activity within the state of Connecticut.

9.      Venue is proper in the District of Connecticut under 28 U.S.C. § 1391(a)(2).

## FACTS

10.     Defendant ADT/TYCO provides security equipment and monitoring services under separate contracts with Eli Lilly for its 35 sales offices and two distribution warehouses located in: Florida, New York, Texas, Alabama, North Carolina, Illinois, Ohio, Colorado, Michigan, Pennsylvania, Kansas, Kentucky, Virginia, Wisconsin, Minnesota, Tennessee, Louisiana, Nebraska, New Jersey, Arizona, California, Washington State, Missouri, Oklahoma, Indiana and Connecticut.   As contracts scheduled to expire, ADT/TYCO submitted "Confidential" bid proposals for Eli Lilly to evaluate ADT/TYCO Security Services, Inc. as a potential vendor.

11.     In 2004, an ADT/TYCO National Accounts Manager and an Integrated Systems Manager relied upon ADT/TYCO's long-standing business relationship of confidence and fidelity with Eli Lilly to gain access to Eli Lilly's Distribution Facilities in California and Connecticut and conduct risk assessments of the security systems with the objective of producing a bid proposal for ADT/TYCO as a potential vendor.

12.     On November 12, 2004 ADT/TYCO furnished to Eli Lilly's Corporate Global Security Department a "CONFIDENTIAL" Proposal.   On its face the proposal acknowledged that it was a "strictly confidential" "bid response" "solely intended for [Eli Lilly] in evaluating ADT/TYCO Security Services, Inc., as a potential vendor" ("2004 Confidential Bid Proposal").

13.     The 2004 Confidential Bid Proposal for ADT/TYCO Services as a potential vendor is not a contract for service; rather it inventoried the equipment existing

at Eli Lilly's California and Connecticut distribution warehouses and contained a narrative description of proposed intrusion detection equipment and of proposed camera surveillance equipment, proposed access control equipment and proposed intercom system equipment for each facility.

14.     The 2004 Confidential Bid Proposal did not contain illustrations or maps or any specific illustrative description of protections in place at the Eli Lilly facilities.

15.     The 2004 Confidential Bid Proposal is a 15 page document that contains work and price proposals for the installation of equipment and system maintenance and monitoring services.

16.     The 2004 Confidential Bid Proposal describes the proposed services as "improvements" without highlighting any shortcomings of the existing systems.

17.     The 2004 Confidential Bid Proposal represents on its face that it is "intended solely" for Eli Lilly to evaluate ADT/TYCO services as a potential vendor and represents that "no portion of the supplied material may be reproduced or distributed in any way without the expressed written permission of ADT/TYCO Security Services, Inc." thereby reinforcing Eli Lilly's expectation that ADT/TYCO would exercise the utmost care to secure and safeguard Eli Lilly's confidential security information.

18.     In 2004 ADT/TYCO and Eli Lilly entered into a five-year contract which expired on November 19, 2009 and which was expressly limited to specific, "itemized equipment and services."  ("2004 ADT/TYCO Contract").

19.     In or about August 2009, ADT/TYCO utilized its relationship with Eli Lilly to access, document, and evaluate sensitive, confidential security information regarding the Eli Lilly distribution facilities in California and Connecticut for the purpose

of generating another Confidential Bid Proposal for Eli Lilly to evaluate ADT/TYCO Security Services, Inc., as a potential vendor.

20.     After its August 2009 evaluation, ADT/TYCO took approximately seven months, until February 19, 2010, to generate its 2010 Confidential System Proposal. (Hereinafter referred to as "2010 ADT/TYCO Confidential System Proposal".)

21.     The 2010 ADT/TYCO Confidential System Proposal represents on its face that it too is "intended solely" for Eli Lilly to evaluate ADT/TYCO services as a potential vendor and represents that "no portion of the supplied material would be reproduced or distributed without the expressed written permission of ADT/TYCO Security Services, Inc." thereby reinforcing Eli Lilly's expectation that ADT/TYCO would exercise the utmost care to secure and safeguard Eli Lilly's confidential security information.

22.     In contrast to the 2004 Confidential Bid Proposal, the 2010 ADT/TYCO Confidential System Proposal narrative enumerates specific details, identifying by "x" and "y" coordinates the location of proposed equipment and illustrates, explains and highlights specific faults and blind spots in the video surveillance systems and the range of view covering enumerated doors and outside bays and details, with specificity, those areas of the doors and bays not visible to the surveillance monitoring.

23.     In contrast to the 2004 Confidential Bid Proposal, the 2010 ADT/TYCO Confidential System Proposal includes architectural drawings of the layout of the interiors of the Eli Lilly distribution facilities in California and Connecticut, with graphic overlays noting every motion detector, beam sensor, roof hatch, intercom, overhead door contact, fixed camera (including the directional view and the items in their view), panic button, card recorder, glass break sensor, contact, control panel and keypad .

24.     In contrast to the 2004 Confidential Bid Proposal, the 2010 ADT/TYCO Confidential System Proposal includes architectural drawings of the layout of the warehouses with graphic overlays and narrative descriptions of "proposed additional warehouse cameras" highlighting the range of view to be monitored by the "proposed" equipment.

25.     In contrast to the 2004 Confidential Bid Proposal, the 2010 ADT/TYCO Confidential System Proposal illustrates that the roofs of the facilities are unmonitored and it contains aerial images with proposed locations of cameras to create "virtual fences" of the perimeters of the facilities.

26.     In contrast to the 2004 Confidential Bid Proposal, the 2010 ADT/TYCO Confidential System Proposal highlights the absence of internal monitoring equipment at specified locations in the warehouses.

27.     The 2010 ADT/TYCO Confidential System Proposal makes no reference to the location of the master control equipment in the California distribution warehouse. However, it highlights the need for and placement of additional motion detectors in the Master Control Center (MCC) in the Connecticut facility.

28.     The 2010 ADT/TYCO Confidential System Proposal expired on May 19, 2010, 90 days after its writing.

29.     At 3:40AM on the morning of March 14, 2010, less than a month after the date of the 2010 ADT/TYCO Confidential System Proposal, pharmaceuticals valued in excess of $60,000,000 were   stolen from the Eli Lilly distribution warehouse in Connecticut.

30.     The perpetrators parked a tractor-trailer in the only loading bay (out of seven) identified on the 2010 ADT/TYCO Confidential System Proposal to be outside the view of the existing surveillance cameras.

31.     The individuals who removed the pharmaceuticals on the morning of March 14, 2010, crossed the entire length of the roof of the distribution warehouse to arrive at a small area comprising less than 1% of the total surface area of the roof. This location was identified on the 2010 ADT/TYCO Confidential System Proposal as above an area unmonitored by the existing security equipment and adjacent to the MCC room which was identified in the 2010 ADT/TYCO Confidential System Proposal by "x" and "y" coordinates as requiring additional intrusion detection devices and cameras. The thieves accessed the MCC room undetected by monitoring equipment and disabled the existing security systems master controls.

32.     The equipment and services at the Eli Lilly facility were operable prior to the event and did not fail; rather they were actively bypassed by individuals with detailed technical knowledge of the layout of the warehouse, its existing security systems and its vulnerabilities.

33.     On March 22, 2010, Eli Lilly formally placed ADT/TYCO headquarters in Boca Raton, Florida on notice that ADT/TYCO was considered a potentially liable party for the loss suffered by Eli Lilly  and a request was made for, among other information, the preservation of all equipment data and documentation contained in ADT/TYCO's computer systems relevant to Eli Lilly's Connecticut facility including but not limited to, the production and preservation of forensically sound and complete back-ups of the electronic systems, all physical evidence of the equipment and monitoring service data

including electronic data (and meta data) relevant to identifying liability for the loss experienced at Eli Lilly.  ADT/TYCO did not respond or otherwise acknowledge this request.

34.     On March 23, 2010, at a meeting regarding the details of the Eli Lilly loss attended by a ADT/TYCO Global Account Manager, a ADT/TYCO Integrated Systems Manager and a ADT/TYCO Connecticut local service manager, Eli Lilly requested that ADT/TYCO furnish all records it maintained regarding Eli Lilly's equipment and services including all monitoring notifications recorded by the equipment at Eli Lilly. ADT/TYCO representatives refused this request.

35.     On or about April 14, 2010, Eli Lilly requested that ADT/TYCO provide documentation and information of the Eli Lilly system, including but not limited to production of all documentation regarding its confidential system assessments and the materials utilized by ADT/TYCO in its 2004 and 2010 proposals for Eli Lilly to consider ADT/TYCO as a potential vendor.

36.     On or about April 14, 2010, ADT/TYCO was also asked to participate in and assist in an analysis of how the equipment and services at the Eli Lilly facility had been bypassed.  Protocols for these evaluations and requests for documentation were furnished to ADT/TYCO for their input, cooperation and participation.

37.     On April 20, 2010, ADT/TYCO's Global Accounts Manager confirmed in writing, that ADT/TYCO would not participate, assist with, or otherwise produce the requested material sought for the investigative protocol.

38.     By virtue of the multiple attempts in 2010 to obtain ADT/TYCO's cooperation in the investigation of and evaluation of ADT/TYCO's potential liability for

the theft on March 14, 2010, ADT/TYCO was on notice of Eli Lilly's investigation of facts necessary to establish causes of action against ADT/TYCO.

39.     At all times prior to and after the indictment of individuals for the theft and possession of Eli Lilly's pharmaceuticals, ADT/TYCO actively obstructed Eli Lilly's ability to evaluate facts and evidence regarding ADT/TYCO's potential liability for failing to safeguard documents pertaining to Eli Lilly's security with the intent of obstructing Eli Lilly's timely discovery of evidence in support of a cause of action.

40.     ADT/TYCO is headquartered in Florida and centralized storage of confidential information regarding the security equipment and services of customers and prospective customers including Eli Lilly, was at all relevant times managed at and through ADT/TYCO's headquarters in Florida.

41.     On April 6, 2012, Florida resident Amaury Villa was indicted in the Southern District of Florida for possession, concealment and conspiracy to sell, in Florida, Eli Lilly pharmaceuticals removed from its distribution facility on March 14, 2010.

42.     On May 3, 2012, Florida residents, Amaury Villa and Amed Villa were indicted in the District of Connecticut for conspiracy to commit theft from interstate shipment and theft from interstate shipment in connection with the March 14, 2010 removal of pharmaceuticals from the Eli Lilly distribution facility.

43.     On September 14, 2012, Florida resident Amaury Villa pled guilty in the Southern District of Florida for possession and conspiracy to sell stolen pharmaceuticals removed on March 14, 2010 from the Eli Lilly distribution facility.

44.     Amaury Villa and Amed Villa utilized confidential information of the security system and the equipment in existence at the Eli Lilly facility, documented and maintained by ADT/TYCO in Boca Raton, Florida to successfully remove pharmaceuticals from Eli Lilly's warehouse without triggering the functioning monitoring security equipment.

45.     The confidential information utilized by Amaury Villa and Amed Villa regarding the location and type of alarm system equipment within the Eli Lilly facility and the deficiencies of that system were identified in the 2010 ADT/TYCO Confidential System Proposal and was unavailable to the general public.

**PATTERN AND PRACTICE OF WAREHOUSE THEFTS "PROTECTED" BY ADT/TYCO Orlando, Florida**

46.     In July 2008, a Quality One Wireless warehouse in Orlando, Florida was illegally entered via a hole cut through the wall of an adjacent warehouse.  Individuals knew precisely where to cut a hole between adjoining walls to gain entry and remove cell phones and wireless equipment without triggering the security equipment and services in existence.  The Orlando warehouse was secured by ADT/TYCO with alarms, motion sensors and video surveillance.  No alarm wires were cut and the ADT/TYCO alarm system for the warehouse and inner offices were working properly at the time of this invasion.

47.     Confidential information regarding the layout of the Quality One warehouse and the location and types of security equipment on site was effectively utilized to bypass the existing ADT/TYCO security systems.

48.     Despite ADT/TYCO's knowledge that this and other warehouse invasions had taken place utilizing confidential knowledge of the warehouse security documented, maintained and stored by ADT/TYCO in Boca Raton, Florida, ADT/TYCO did not perform internal vulnerability assessments of the security of its information storage systems.

49.     Despite ADT/TYCO's knowledge that this and other warehouse invasions had taken place utilizing confidential information documented, maintained and stored by ADT/TYCO in Boca Raton, Florida, it did not disclose or warn Eli Lilly of the increased foreseeable harm of ADT/TYCO's   failure to secure and safeguard the confidential information about Eli Lilly's facilities in its possession.

**Grand Prairie, Texas**

50.     In December 2009, Florida resident, Amaury Villa was arrested and pled guilty to breaking and entering the AM-C Warehouse in Grand Prairie, Texas.

51.     The security equipment and services at the Grand Prairie Texas warehouse provided by ADT/TYCO included motion detectors, infrared beams and contact sensors.

52.     In or about March 2009, an ADT/TYCO Commercial Sales Representative utilized ADT/TYCO's representations as an expert in security analysis and its confidential business relationship to conduct a security assessment of security equipment and services in place at the facility and generated a document/proposal that included a detailed map of the Grand Prairie, Texas warehouse facility that identified the locations of the existing security equipment and inventory within the warehouse.

53.     ADT/TYCO documented that the offices within the warehouse were inadequately monitored by security equipment and that the halls and corridors were monitored by intrusion detection equipment.

54.     ADT/TYCO also documented that the inventory of stored merchandise within the warehouse was cigarettes and mapped where the inventory was located.

55.     Despite the existence of an elaborate security system in place at the Grand Prairie, Texas warehouse, Amaury Villa avoided the security system by rappelling from a small location on the roof of the warehouse into the office spaces (outside the scope of detection devices) and continued to avoid the monitored corridors and hallways by tunneling through the unmonitored office walls.

56.     Amaury Villa did not remove any property within the office spaces; rather, he utilized the offices to avoid the monitored corridors to gain access to the warehouse area that was identified by ADT/TYCO as storing cigarettes.

57.     The equipment and monitoring services at the Grand Prairie, Texas warehouse did not fail, but were actively bypassed by Amaury Villa, a Florida resident, with detailed confidential technical knowledge of the system and its flaws as documented and maintained by ADT/TYCO in Boca Raton, Florida.

58.     Despite ADT/TYCO's knowledge that this and other warehouse invasions had taken place utilizing confidential knowledge of the warehouse security documented, maintained and stored by ADT/TYCO in Boca Raton, Florida, ADT/TYCO did not perform internal vulnerability assessments of the security of its information storage systems.

59.     Despite ADT/TYCO's knowledge that this and other warehouse invasions had taken place utilizing confidential information documented, maintained and stored by ADT/TYCO in Boca Raton, Florida it did not disclose or warn Eli Lilly of the increased foreseeable harm of ADT/TYCO's failure to secure and safeguard the confidential information about Eli Lilly's facilities in its possession.

**East Peoria, Illinois**

60.     Defendant Amed Villa a Florida resident, has been charged in connection with the January 2010 burglary of 3,500 cases of cigarettes, valued at more than $8 million, stored at the Federal Warehouse in East Peoria, Illinois.

61.     In January 2010, ADT/TYCO Security provided security services to the East Peoria, Illinois warehouse.

62.     The equipment and monitoring services at the East Peoria, Illinois warehouse did not fail, but were actively bypassed by Amaury Villa, a Florida resident, with detailed confidential technical knowledge of the system and its flaws as documented and maintained by ADT/TYCO in Boca Raton, Florida.

63.     Despite ADT/TYCO's knowledge that this and other warehouse invasions had taken place utilizing confidential knowledge of the warehouse security documented, maintained and stored by ADT/TYCO in Boca Raton, Florida, ADT/TYCO did not perform internal vulnerability assessments of the security of its information storage systems.

64.     Despite ADT/TYCO's knowledge that this and other warehouse invasions had taken place utilizing confidential information documented, maintained and stored by ADT/TYCO in Boca Raton, Florida it did not disclose or warn Eli Lilly of the increased

foreseeable harm of ADT/TYCO's failure to secure and safeguard the confidential information about Eli Lilly's facilities in its possession.

**Duties Owed by ADT/TYCO**

65.     ADT/TYCO holds itself out to the consuming public and to Eli Lilly as possessing specialized knowledge and expertise in performing security assessments, vulnerability analysis and in security equipment and monitoring systems.

66.     ADT/TYCO invited and induced Eli Lilly to place confidence and trust in ADT/TYCO's ability to safeguard and protect Eli Lilly's confidential information in permitting it to evaluate and assess Eli Lilly's security equipment and services.

67.     Eli Lilly depended on ADT/TYCO to use the utmost prudence and care in protecting and safeguarding the confidential information that it compiled, created, maintained and stored about Eli Lilly's security infrastructure.

68.     ADT/TYCO had a continuing duty of fidelity and care to use the utmost prudence and care in protecting and safeguarding the confidential information regarding Eli Lilly's security infrastructure that it received, compiled, created, maintained and developed in its dealings with Eli Lilly.

69.     ADT/TYCO had a continuing duty as an agent of Eli Lilly to use the utmost prudence and care in protecting and safeguarding the confidential information regarding Eli Lilly's security infrastructure that it received, compiled, created, maintained and developed in its dealings with Eli Lilly.

70.     Harm to Eli Lilly was foreseeable where ADT/TYCO failed to employ methods to ensure that it safeguarded and protected the information it received, compiled,

created, maintained and developed regarding the confidential details of Eli Lilly's security equipment and services.

71.     ADT/TYCO knew or reasonably should have known that multiple warehouse invasions had occurred utilizing confidential information about the vulnerability of the security system at facilities for which ADT/TYCO had conducted security evaluations and assessments and/or provided security services.

72.     ADT/TYCO had an ongoing and continuing duty to assess the vulnerabilities of the security of its information storage systems and to act upon the knowledge that multiple invasions had occurred at facilities for which ADT/TYCO received, compiled and/or developed confidential information regarding existing security equipment and services.

73.     ADT/TYCO had an ongoing and continuing duty to assess the vulnerabilities of the security of its information storage systems and to disclose to its clients and prospective clients the knowledge that multiple invasions had occurred at facilities for which ADT/TYCO received, compiled and/or developed confidential information regarding existing security equipment and services.

74.     ADT/TYCO had an ongoing and continuing duty to reveal to Eli Lilly vulnerabilities it knew or reasonably should have known existed with the security of its information storage systems in Boca Raton, Florida.

**Breach**

75.     By virtue of ADT/TYCO's negligence, gross negligence, and/or intentional, reckless, willful, wanton, careless actions or inactions, ADT/TYCO breached

its duties to Eli Lilly and Eli Lilly was caused to sustain injury to its business and loss of its property and inventory.

## ADT/TYCO's NEGLIGENCE

76.     By virtue of ADT/TYCO's negligence, gross negligence, intentional and/or wanton, reckless or willful disregard for Eli Lilly's security, ADT/TYCO permitted to become available to third persons, confidential, sensitive information stored in Boca Raton, Florida regarding the details of the components of the existing security system and equipment at Eli Lilly's facilities.

77.     By virtue of ADT/TYCO's negligence, gross negligence, intentional and/or wanton, reckless or willful disregard for the confidential sensitive information entrusted to ADT/TYCO in the course of its business dealings with Eli Lilly, ADT/TYCO caused confidential information it compiled, maintained and stored in Boca Raton, Florida to become vulnerable to third persons and Eli Lilly was foreseeably caused to suffer harm.

78.     By virtue of ADT/TYCO's negligence, gross negligence, intentional and/or wanton, reckless or willful disregard for Eli Lilly's security, ADT/TYCO its agents, subcontractors, servants, and/or employees, failed to safeguard the confidential, sensitive information stored in Boca Raton, Florida, obtained by virtue of its fiduciary relationship with Eli Lilly and in so doing foreseeably caused Eli Lilly to suffer harm.

79.     By virtue of ADT/TYCO's negligence, gross negligence and/or intentional, wanton, reckless, willful disregard for Eli Lilly's security, ADT/TYCO its agents, subcontractors, servants, and/or employees, failed to safeguard the confidential,

sensitive information stored in Boca Raton, Florida, obtained by virtue of its agency relationship with Eli Lilly and in so doing foreseeably caused Eli Lilly to suffer harm.

80.     By virtue of ADT/TYCO's negligence, gross negligence and/or intentional, wanton, reckless or willful disregard for Eli Lilly's security, ADT/TYCO, its agents, subcontractors, servants, and/or employees failed to disclose and or warn Eli Lilly of the increased foreseeable harm created by ADT/TYCO's detailed documentation of the equipment and services at Eli Lilly and of their vulnerabilities.

81.     By virtue of ADT/TYCO's negligence, gross negligence and/or intentional wanton, reckless or willful disregard for Eli Lilly's security, ADT/TYCO, its agents, subcontractors, servants, and/or employees failed to disclose and/or warn Eli Lilly of multiple incidents in which its clients and prospective clients had become victims of successful warehouse invasions committed utilizing sensitive, confidential information compiled, identified, documented and stored by ADT/TYCO in Boca Raton, Florida.

82.     By virtue of ADT/TYCO's negligence, gross negligence and/or intentional wanton, reckless or willful disregard for Eli Lilly's security, ADT/TYCO, its agents, subcontractors, servants, and/or employees failed to perform internal vulnerability assessments of the security of its information storage systems in Boca Raton, Florida.

83.     By virtue of ADT/TYCO's negligence, gross negligence and/or intentional wanton, reckless or willful disregard for Eli Lilly's security, ADT/TYCO, its agents, subcontractors, servants, and/or employees performed internal vulnerability assessments of the security of its information storage systems and failed to disclose to Eli Lilly its foreseeable increased risk of harm.

## COUNT I

### (Failure to Safeguard Confidential Information)

84.     Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1 through 83 of the Amended Complaint as if fully alleged herein.

85.     As a direct and proximate result of the negligence, gross negligence, and/or intentional, reckless, willful, wanton, actions and/or omissions of ADT/TYCO, its agents, subcontractors, servants, and/or employees, compiled a complete and thorough report of Eli Lilly's existing security equipment and services in a single document creating a comprehensive guide to Eli Lilly's security coverage.

86.     As a direct and proximate result of the negligence, gross negligence, and/or intentional, reckless, willful, wanton, actions and/or omissions of ADT/TYCO, its agents, subcontractors, servants, and/or employees, ADT/TYCO compiled and documented a detailed report of the confidential information regarding Eli Lilly's existing security system and then utilized that confidential information to produce, in a single document, a detailed outline of the security vulnerabilities and potential flaws inherent in Eli Lilly's existing security infrastructure.

87.     As a direct and proximate result of the negligence, gross negligence, and/or intentional, reckless, willful, wanton, actions and/or omissions of ADT/TYCO, its agents, subcontractors, servants, and/or employees, ADT/TYCO failed to safeguard privileged, confidential, detailed, technically precise information regarding the security equipment and services at Eli Lilly's facility and Eli Lilly was foreseeably caused to suffer harm.

88.     As a direct and proximate result of the negligence, gross negligence, and/or intentional, reckless, willful, wanton, actions and/or omissions of ADT/TYCO, its agents, subcontractors, servants, and/or employees, ADT/TYCO failed to safeguard privileged, confidential, detailed, technically precise information specifying the vulnerabilities in Eli Lilly's security system and Eli Lilly was foreseeably caused to suffer harm.

89.     Pursuant to National Union's policy of insurance, National Union paid Eli Lilly an amount in excess of $ 42,118,354.00 for the damage to real property, loss of inventory and other expenses associated with the harm suffered.

90.     By virtue of these payments, National Union acquired, in law and equity, the right to recover these sums against ADT/TYCO.

**WHEREFORE,** Eli Lilly by National Union, demands judgment against ADT/TYCO for an amount in excess of $ 42,118,354.00 together with the costs of this action, and such other relief as deemed just and proper under the law.

## COUNT II

### (Failure to Disclose/Warn)

91.     Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1 through 83 of the Amended Complaint as if fully alleged herein.

92.     As a direct and proximate result of the negligence, gross negligence, and/or intentional, reckless, willful, wanton, actions and/or omissions of ADT/TYCO, its agents, subcontractors, and servants, and/or employees, ADT/TYCO failed to disclose and to warn Eli Lilly about previous incidents in which clients and prospective clients suffered theft losses in which the precise confidential information compiled, documented

and maintained by ADT/TYCO in Boca Raton, Florida had been utilized to bypass their existing security systems and by virtue of this failure to disclose and warn, Eli Lilly also disclosed confidential sensitive information to ADT/TYCO and was foreseeably caused to suffer harm.

93.    As a direct and proximate result of the negligence, gross negligence, and/or intentional, reckless, willful, wanton, actions and/or omissions of ADT/TYCO, its agents, subcontractors, and servants, and/or employees, ADT/TYCO failed to disclose to and to warn Eli Lilly of known and foreseeable risks inherent in documenting, compiling, maintaining and storing confidential security information about Eli Lilly's security equipment, services and its vulnerabilities at the ADT/TYCO headquarters in Boca Raton, Florida and was foreseeably caused to suffer harm.

94.    As a direct and proximate result of the negligence, gross negligence, and/or intentional, reckless, willful, wanton, actions and/or omissions of ADT/TYCO, its agents, subcontractors, servants, and/or employees, ADT/TYCO failed to disclose and to warn Eli Lilly of the known facts of recent warehouse invasions experienced by ADT/TYCO clients and prospective clients in which confidential information about the vulnerabilities of their existing security infrastructure had been exploited and was documented, maintained and stored at the ADT/TYCO headquarters in Boca Raton, Florida.

95.    By virtue of ADT/TYCO's failure to disclose and to warn Eli Lilly of ADT/TYCO's failures, Eli Lilly permitted ADT/TYCO to possess, maintain and store confidential information at its headquarters in Boca Raton, Florida and was foreseeably caused to suffer harm.

96.     Pursuant to National Union's policy of insurance, National Union paid Eli Lilly an amount in excess of $ 42,118,354.00 for the damage to real property, loss of and damage to, inventory and other expenses associated with the harm suffered.

97.     By virtue of these payments, National Union acquired, in law and equity, the right to recover these sums against liable third party ADT/TYCO.

**WHEREFORE,** Eli Lilly by National Union, demands judgment against Defendant ADT/TYCO for an amount in excess of $ 42,118,354.00 together with the costs of this action, and such other relief as deemed just and proper under the law.

## COUNT III

### (Fraudulent Inducement)

98.     Eli Lilly repeats and reiterates each and every allegation set forth in paragraphs 1 through 83 of the Amended Complaint as if fully alleged herein.

99.     At all times prior to this incident ADT/TYCO represented itself to Eli Lilly as possessing specialized knowledge and expertise in security systems, capable of evaluating existing security systems and services in confidence and without increasing Eli Lilly's risk of exposure to theft.

100.    ADT/TYCO through its global accounts managers and general advertising, requests the opportunity to perform security assessments of clients and perspective clients' security systems.

101.    ADT/TYCO undergoes no routine, internal vulnerability assessments of the security of its information storage systems in Boca Raton, Florida to ensure that the confidential information in its possession is safeguarded and not improperly accessed.

102.    As a direct and proximate result of the negligence, gross negligence, and/or intentional, reckless, willful, wanton, actions and/or omissions of ADT/TYCO, its agents, subcontractors, servants, and/or employees, ADT/TYCO fraudulently induced Eli Lilly to permit ADT/TYCO to conduct a security assessment and review of its existing security equipment, services and infrastructure and to compile and store detailed, confidential documentation of Eli Lilly's security system and its vulnerabilities in Boca Raton, Florida.

103.    Eli Lilly justifiably relied on the representations of representatives of ADT/TYCO,  as reflected on the face of both the 2004 Confidential Bid Proposal and the 2010 ADT/TYCO Confidential System Proposal, that in permitting ADT/TYCO to compile, maintain and store detailed documentation of Eli Lilly's existing security system in Boca Raton, Florida for the purpose of performing security assessments and review the existing security equipment, services and infrastructure to create a "confidential" proposal for ADT/TYCO to act as a security vendor to Eli Lilly that the documentation it possessed and stored would remain "confidential" and would be used solely for the purpose of Eli Lilly in evaluating ADT/TYCO Security Services as a potential vendor. ADT/TYCO represented that "[n]o portion of the supplied material may be reproduced or distributed in any way".

104.    Eli Lilly justifiably relied on the representations of ADT/TYCO that its information would be safeguarded by ADT/TYCO in Boca Raton, Florida and would remain "confidential" to its detriment and was caused to foreseeably suffer harm.

105.    Pursuant to National Union's policy of insurance, National Union paid Eli Lilly an amount in excess of $ 42,118,354.00 for the damage and loss to real property, loss of inventory and other expenses associated with the harm suffered.

106.    By virtue of these payments, National Union acquired, in law and equity, the right to recover these sums against liable third party ADT/TYCO.

**WHEREFORE,** Eli Lilly by National Union, demands judgment against Defendant ADT/TYCO for an amount in excess of $ 42,118,354.00 together with the costs of this action, and such other relief as deemed just and proper under the law.

## COUNT IV

### (**Constructive Fraud Against ADT**)

107.    Eli Lilly repeats and reiterates each and every allegation set forth in paragraphs 1 through 83 of the Amended Complaint as if fully alleged herein.

108.    At all times prior to this incident ADT/TYCO represented itself to Eli Lilly as possessing specialized knowledge and expertise in security systems, capable of evaluating existing security systems and services in confidence and without increasing Eli Lilly's risk of exposure to theft.

109.    ADT/TYCO through its global accounts managers and general advertising, requests the opportunity to perform security assessments of clients and perspective clients' security systems.

110.    ADT/TYCO undergoes no routine, internal vulnerability assessments of the security of its information storage systems in Boca Raton, Florida to ensure that the confidential information in its possession is safeguarded and not improperly accessed.

111.   As a direct and proximate result of the negligence, gross negligence, and/or intentional, reckless, willful, wanton, actions and/or omissions of ADT/TYCO, its agents, subcontractors, servants, and/or employees, ADT/TYCO fraudulently induced Eli Lilly to permit ADT/TYCO to conduct a security assessment and review of its existing security equipment, services and infrastructure and to compile and store detailed, confidential documentation of Eli Lilly's security system and its vulnerabilities in Boca Raton, Florida.

112.   Eli Lilly justifiably relied on the representations of representatives of ADT/TYCO, as reflected on the face of both the 2004 Confidential Bid Proposal and the 2010 ADT/TYCO Confidential System Proposal, that in permitting ADT/TYCO to compile, maintain and store detailed documentation of Eli Lilly's existing security system in Boca Raton, Florida for the purpose of performing security assessments and review the existing security equipment, services and infrastructure to create a "confidential" proposal for ADT/TYCO to act as a security vendor to Eli Lilly that the documentation it possessed and stored would remain "confidential" and would be used solely for the purpose of Eli Lilly in evaluating ADT/TYCO Security Services as a potential vendor. ADT/TYCO represented that "[n]o portion of the supplied material may be reproduced or distributed in any way".

113.   Eli Lilly justifiably relied on the representations of ADT/TYCO that its information would be safeguarded by ADT/TYCO in Boca Raton, Florida and would remain "confidential" to its detriment and was caused to foreseeably suffer harm.

114.    Pursuant to National Union's policy of insurance, National Union paid Eli Lilly an amount in excess of $ 42,118,354.00 for the damage and loss to real property, loss of inventory and other expenses associated with the harm suffered.

115.    By virtue of these payments, National Union acquired, in law and equity, the right to recover these sums against liable third party ADT/TYCO.

**WHEREFORE,** Eli Lilly by National Union, demands judgment against Defendant ADT/TYCO for an amount in excess of $ 42,118,354.00 together with the costs of this action, and such other relief as deemed just and proper under the law.

## COUNT V

### (Fraudulent Misrepresentation Against ADT)

116.    Eli Lilly repeats and reiterates each and every allegation set forth in paragraphs 1 through 83 of the Amended Complaint as if fully alleged herein.

117.    At all times prior to this incident ADT/TYCO represented itself to Eli Lilly as possessing specialized knowledge and expertise in security systems, capable of evaluating existing security systems and services in confidence and without increasing Eli Lilly's risk of exposure to theft.

118.    ADT/TYCO through its global accounts managers and general advertising, requests the opportunity to perform security assessments of clients and perspective clients' security systems.

119.    ADT/TYCO undergoes no routine, internal vulnerability assessments of the security of its information storage systems in Boca Raton, Florida to ensure that the confidential information in its possession is safeguarded and not improperly accessed.

25

120.    As a direct and proximate result of the negligence, gross negligence, and/or intentional, reckless, willful, wanton, actions and/or omissions of ADT/TYCO, its agents, subcontractors, servants, and/or employees, ADT/TYCO fraudulently induced Eli Lilly to permit ADT/TYCO to conduct a security assessment and review of its existing security equipment, services and infrastructure and to compile and store detailed, confidential documentation of Eli Lilly's security system and its vulnerabilities in Boca Raton, Florida.

121.    Eli Lilly justifiably relied on the representations of representatives of ADT/TYCO, as reflected on the face of both the 2004 Confidential Bid Proposal and the 2010 ADT/TYCO Confidential System Proposal, that in permitting ADT/TYCO to compile, maintain and store detailed documentation of Eli Lilly's existing security system in Boca Raton, Florida for the purpose of performing security assessments and review the existing security equipment, services and infrastructure to create a "confidential" proposal for ADT/TYCO to act as a security vendor to Eli Lilly that the documentation it possessed and stored would remain "confidential" and would be used solely for the purpose of Eli Lilly in evaluating ADT/TYCO Security Services as a potential vendor. Both ADT/TYCO's 2004 represented that "[n]o portion of the supplied material may be reproduced or distributed in any way".

122.    Eli Lilly justifiably relied on the representations of ADT/TYCO that its information would be safeguarded by ADT/TYCO in Boca Raton, Florida and would remain "confidential" to its detriment and was caused to foreseeably suffer harm.

123.    Pursuant to National Union's policy of insurance, National Union paid Eli Lilly an amount in excess of $ 42,118,354.00 for the damage and loss to real property, loss of inventory and other expenses associated with the harm suffered.

124.    By virtue of these payments, National Union acquired, in law and equity, the right to recover these sums against liable third party ADT/TYCO.

**WHEREFORE,** Eli Lilly by National Union, demands judgment against Defendant ADT/TYCO for an amount in excess of $ 42,118,354.00 together with the costs of this action, and such other relief as deemed just and proper under the law.

## COUNT VI

### (Negligent Misrepresentation Against ADT)

125.    Eli Lilly repeats and reiterates each and every allegation set forth in paragraphs 1 through 83of the Amended Complaint as if fully alleged herein.

126.    At all times prior to this incident ADT/TYCO represented itself to Eli Lilly as possessing specialized knowledge and expertise in security systems, capable of evaluating existing security systems and services in confidence and without increasing Eli Lilly's risk of exposure to theft.

127.    ADT/TYCO through its global accounts managers and general advertising, requests the opportunity to perform security assessments of clients and perspective clients' security systems.

128.    ADT/TYCO undergoes no routine, internal vulnerability assessments of the security of its information storage systems in Boca Raton, Florida to ensure that the confidential information in its possession is safeguarded and not improperly accessed.

129.   As a direct and proximate result of the negligence, gross negligence, and/or intentional, reckless, willful, wanton, actions and/or omissions of ADT/TYCO, its agents, subcontractors, servants, and/or employees, ADT/TYCO fraudulently induced Eli Lilly to permit ADT/TYCO to conduct a security assessment and review of its existing security equipment, services and infrastructure and to compile and store detailed, confidential documentation of Eli Lilly's security system and its vulnerabilities in Boca Raton, Florida.

130.   Eli Lilly justifiably relied on the representations of representatives of ADT/TYCO, as reflected on the face of both the 2004 Confidential Bid Proposal and the 2010 ADT/TYCO Confidential System Proposal, that in permitting ADT/TYCO to compile, maintain and store detailed documentation of Eli Lilly's existing security system in Boca Raton, Florida for the purpose of performing security assessments and review the existing security equipment, services and infrastructure to create a "confidential" proposal for ADT/TYCO to act as a security vendor to Eli Lilly that the documentation it possessed and stored would remain "confidential" and that its use was solely intended for the purpose of Eli Lilly in evaluating ADT/TYCO Security Services as a potential vendor.   ADT/TYCO represented that "[n]o portion of the supplied material may be reproduced or distributed in any way".

131.   Eli Lilly justifiably relied on the representations of ADT/TYCO that its information would be safeguarded by ADT/TYCO in Boca Raton, Florida and would remain "confidential" to its detriment and was caused to foreseeably suffer harm.

132.     Pursuant to National Union's policy of insurance, National Union paid Eli Lilly an amount in excess of $ 42,118,354.00 for the damage and loss to real property, loss of inventory and other expenses associated with the harm suffered.

133.     By virtue of these payments, National Union acquired, in law and equity, the right to recover these sums against liable third party ADT/TYCO.

**WHEREFORE,** Eli Lilly by National Union, demands judgment against Defendant ADT/TYCO for an amount in excess of $ 42,118,354.00 together with the costs of this action, and such other relief as deemed just and proper under the law.

## COUNT VII

**(Injuring the right of the party to receive the benefit of a contract against ADT)**

134     Eli Lilly repeats and reiterates each and every allegation set forth in paragraphs 1 through 83 of the  Amended Complaint as if fully alleged herein.

135.     As a direct and proximate result of the negligence, gross negligence, and/or intentional, reckless, willful, wanton, actions and/or omissions of ADT/TYCO, its agents, subcontractors, servants, and/or employees, ADT/TYCO failed to safeguard and protect confidential information regarding Eli Lilly's security system stored in Boca Raton, Florida and thereby injured Eli Lilly's right to receive the benefit of its contracted security services with ADT/TYCO.

136.     By, and in the course of, generating a document which consolidated confidential information detailing Eli Lilly's security system infrastructure and failing to protect and safeguard that information, ADT/TYCO created the opportunity for Eli Lilly to foreseeably suffer a breach of security and thereby incur damage and loss of inventory,

thus injuring Eli Lilly's right to receive the benefit of its contracted security services with ADT/TYCO.

137.    Pursuant to National Union's policy of insurance, National Union paid Eli Lilly an amount in excess of $ 42,118,354.00 for the damage to real property, loss of inventory and other expenses associated with the harm suffered.

138.    By virtue of these payments, National Union acquired, in law and equity, the right to recover these sums against liable third party ADT/TYCO.

**WHEREFORE,** Eli Lilly by National Union, demands judgment against Defendant ADT/TYCO for an amount in excess of $ 42,118,354.00 together with the costs of this action, and such other relief as deemed just and proper under the law.

## COUNT VIII

**(Violation of the Connecticut Unfair Trade Practices Act "CUTPA")**

139.    Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1 through 83 of the Amended Complaint as if fully alleged herein.

140.    Defendant ADT/TYCO holds itself out to the general public and to plaintiff in particular as safe, responsible, state-of-the-art, and capable of safeguarding Eli Lilly's security system.

141.    Defendant ADT/TYCO's claims of fidelity and care with regard to safeguarding Eli Lilly's security system were untrue and known to be untrue by defendant at the time Plaintiff was caused to rely on them.

142.    Adequate safety standards sufficient to protect details of  Eli Lilly's existing security system, provided by defendant, constitute the sort of information that a consumer of contracted securities equipment and services would expect to exist of its

security service provider and of the sort that Defendant led  Eli Lilly to believe existed, but which in fact did not exist.

143.    Had the Defendant in fact met its duty to safeguard confidential information regarding the layout of Eli Lilly's existing security system, damage to  Eli Lilly in the form of harm and lost property would not have occurred.  Said damages constitute an ascertainable loss of inventory and real property which were forseeable to ADT/TYCO.

144.    Defendant's false statements and inducements regarding its safety standards occurred in the conduct of trade and/or commerce.

145.    As such, these false statements and inducements constitute an unfair trade practice, as that term is used within the Connecticut Unfair Trade Practices Act, C.G.S. §§ 42-110a through 42-110q. These practices offend public policy, are immoral, unethical, and unscrupulous, and have caused substantial injury to consumers of Defendant's services, including Eli Lilly.

146.    As a direct and proximate result of defendant's breach of its obligations under the Connecticut Unfair Trade Practices Act, Eli Lilly suffered loss and damages in excess of $ 42,118,354.00 for the damage to real property, inventory and other expenses associated with their loss.

**WHEREFORE,** Eli Lilly by National Union, demands judgment against Defendant ADT/TYCO for an amount in excess of $ 42,118,354.00 together with the costs of this action, and such other relief as deemed just and proper under the law.

## COUNT IX

### (Punitive Damages)

147.  Plaintiffs repeat and reiterate each and every allegation set forth in paragraphs 1 through 83 of the Amended Complaint as if fully alleged herein.

148.  By virtue of the foregoing Defendant's failure to safeguard Plaintiffs security system information was a result of Defendant ADT/TYCO's gross negligence, intentional and/or reckless and wanton violation of Eli Lilly's rights and of Eli Lilly's property, and/or was the result of Defendant ADT/TYCO's reckless indifference to those rights.

149.  Pursuant to National Union's policy of insurance, National Union paid Eli Lilly an amount in excess of $ 42,118,354.00 for the damage to real property, loss of inventory and other expenses associated with the harm suffered.

150.  By virtue of these payments, National Union acquired, in law and equity, the right to recover these sums against ADT/TYCO.

WHEREFORE, Plaintiff seeks punitive damages in an amount to be awarded by the jury, and such other relief as deemed just and proper under the law.

Eli Lilly hereby request a trial by jury.

Dated this 16th day of April 2013.

> NATIONAL UNION FIRE INSURANCE
> COMPANY OF PITTSBURGH, a/s/o ELI LILLY
> AND COMPANY
> By:
> THOMAS L. TISDALE, ESQ. (ct06793)
> Tisdale Law Offices, LLC60 East 42nd St.,
> Suite 1638
> New York, NY 10165
> -and-
>
> ELISA TARA GILBERT, ESQ ( #EG5713 )
> (pending pro hac vice)
> THE GILBERT FIRM, P.C.
> 325 EAST 57TH STREET
> NEW YORK, NY 10022
> (212) 286-8524